1747

SHELBY MUTUAL INSURANCE COMPANY, Respondent v. C.B. ASK-
INS and Dave Tisdale, individually and d/b/a Lake City Heating and Air
Conditioning Co., Everett Moore, Warren L. Moore, The Aetna Casualty
& Surety Co., Westchester Fire Insurance Co., U.S. Fire Insurance Co.,
Great American Insurance Co., and Reliance Insurance Co., of whom
C.B. Askins and Dave Tisdale, individually and d/b/a Lake City Heating
and Air Conditioning Co., are the Appellants, and Everett Moore, War-
ren L. Moore, The Aetna Casualty & Surety Co., Westchester Fire In-
surance Co., U.S. Fire Insurance Co., Great American Insurance Co. and
Reliance Insurance Co., are Respondents.

(413 S.E. (2d) 855)

Court of Appeals

*E. LeRoy Nettles, Sr.* of *Nettles, Turbeville & Reddeck,*
Lake City, *for appellants.*

*Julius W. McKay, II* of *McKay, McKay & Henry, Wilburn
Brewer, Jr.,* and *Marcus A. Manos,* Columbia, *J. Edward Bell,
III* of *Bell & Bagley,* Sumter, *Saunders M. Bridges, Jr.* of

*Bridges & Orr, L. Hunter Limbaugh* of *Willcox Law Firm,* and *Michael M. Nunn* of *Coleman, Aiken & Chase,* Florence, *for respondents.*

Heard Nov. 11, 1991.

Decided Jan. 6, 1992.

CURETON, Justice:

This is a declaratory judgment action to determine whether several insurance companies have a duty to defend and provide coverage to C.B. Askins and Dave Tisdale, individually and d/b/a Lake City Heating and Air Conditioning Co. (Lake City Heating). The trial court held Lake City Heating was not a named insured under any of the policies before the court. The court found no basis on which to reform any policy. The court did not reach the issue of coverage for any named insured under several policies that were not before the court because it held it did not have sufficient factual information to make a determination. Lake City Heating appeals. We affirm.

## I.

C.B. Askins and Dave Tisdale were equal partners in Lake City Heating and Air Conditioning Company. Lake City Heating operated as a partnership until 1982 when Askins took over Tisdale's interest and ran the business as a sole proprietorship until it ceased operations in 1984. While Lake City Heating operated as a partnership, Tisdale ran the business. Askins was not involved in the daily activities of the partnership but was involved in a number of other business ventures.

On or about July 8, 1972, Mrs. Everett Moore contracted with Lake City Heating to install an air conditioning system in her home. She primarily dealt with Tisdale. In July or early August the system was installed by Lake City Heating. A service call was made in 1972 to correct a problem with the drain. There were no other service calls to the Moore residence by Lake City Heating after 1972.

In November of 1985, Mrs. Moore filed a lawsuit in Florence County against C.B. Askins and Dave Tisdale, individually and d/b/a Lake City Heating and Air Conditioning Company. The suit alleged the air conditioning system was improperly installed by Lake City Heating causing water to drip under the Moore home resulting in moisture and mold in the

basement. Moore allegedly developed severe respiratory problems and asthma because of the mold. The complaint contained counts in negligence and strict liability in tort.

This declaratory judgment action was filed due to a dispute between various insurance companies and C.B. Askins over the duty of the companies to provide a defense for the Moore suit and to provide coverage for the potential liability to Moore. The parties agreed to a stipulation of fact relating to the various insurance policies. The stipulation is as follows: C.B. Askins had insurance in some form prior to the date of the installation through the period of time which the lawsuit was filed. Whether any of the underlying carriers specifically insured C.B. Askins and Dave Tisdale d/b/a Lake City Heating and Air Conditioning Co. for the type of loss claimed by Mrs. Moore is the issue for the court to determine.

The following are the companies who provided insurance coverage to C.B. Askins and the dates of coverage:

1. The Aetna Casualty and Surety Company from 10-1-69 to 10-1-75.
2. Westchester Fire Insurance Company [through Crum and Forester Insurance Companies] from 10-4-75 to 10-4-76.
3. U.S. Fire Insurance Company [through Crum and Forester Insurance Companies] from 10-4-76 to 10-4-77.
4. U.S. Fire Insurance Company from 10-4-77 to 10-4-78. This policy was canceled effective December 16, 1977.
5. Great American Insurance Company from 12-16-77 to 12-16-78.
6. Great American Insurance Company from 12-16-78 to 12-16-79.
7. Great American Insurance Company from 12-16-79 to 12-16-80.
8. Great American Insurance Company from 12-16-80 to 12-16-81.
9. Shelby Mutual Insurance Company from 12-16-81 to 10-1-82.
10. Shelby Mutual Insurance Company from 10-1-82 to 10-1-83.
11. Shelby Mutual Insurance Company from 10-1-83 to 10-1-84. This policy was canceled on 2-1-84.

12. Reliance Insurance Company from 2-1-84 to 10-1-84.
13. Shelby Mutual Insurance Company from 10-1-84 to 10-1-85. This policy was initially [written to expire in] 1987 but was canceled effective 10-1-85 when Shelby Mutual ceased writing business in South Carolina.

The numerous policies in effect during the relevant time frame arose out of the business activities of C.B. Askins. Mr. Askins was an experienced businessman involved in the general contracting business through his company, C.B. Askins & Company. Askins also owned significant interests in other businesses.

The order of the trial court sets forth the factual scenario relating to the insurance policies. We incorporate its language with certain modifications as follows:

Askins placed comprehensive general liability coverage for his operations in C.B. Askins & Company and other entities which he owned through the T & J Insurance Agency owned by Thomas Ragsdale beginning in the late 1960's. Ragsdale received information from Askins concerning his operations and ownership interests based upon insurance policies formerly written through Lake City Underwriters. Askins requested that Ragsdale bid out his insurance coverage to several different companies attempting to get the best premium for the same type of coverage. Askins would follow this same procedure in having various brokers bid on C.B. Askins & Company insurance coverage based on his existing insurance policy each time he [changed] insurers.

Ragsdale placed a policy through Aetna in which [C.B. Askins et al.] was the named insured. [The named insured was designated on the declarations as an individual.] This policy included a special endorsement adding other named insureds.[1] The policy also contains specific lan-

[1] SPECIAL ENDORSEMENT
It is agreed that item 1 of the declarations, named insured, shall read as follows:
C.B. Askins and Mrs. Sue B. Askins; and
C.B. Askins doing business as C.B. Askins and Company; and
C.B. Askins Trustee for F. David Askins; and
D.C.B. Askins Trustee for C.B. Askins III; and
Askins Real Estate Corporation and any company or business entity incorporated under the general corporation laws or chartered by special legislation

guage concerning the person insured.[2] This policy did not provide general liability, completed operations, or products liability coverage for [Lake City Heating] which was not named as an insured nor was it included under the special endorsement as Askins did not own more than fifty percent of [Lake City Heating]. The only place in the entire policy where [Lake City Heating] was mentioned was under a schedule of buildings which specifically stated that a building occupied by [Lake City Heating] was insured for lessor's coverage only and that the building was not occupied by the insured and had no other classification. The premium classification included in the policy did not include air conditioning and heating work, refrigeration work, or sheet metal work, the operations engaged in by [Lake City Heating].

During the same time period, as evidenced by certificates of insurance, premium invoices, and claims letters, Aetna wrote a separate policy naming C.B. Askins and Dave Tisdale d/b/a Lake City Heating and Air Conditioning Company as a named insured. This policy as evidenced by the certificates of insurance provided comprehensive general liability coverage. While the actual policy could not be located, the probability is that it provided

---

or legislative grant of any state, territory or possession of the United States of America or the Dominion of Canada or its Providences [sic], while the aforenamed owns an interest of more than fifty percent (50%) during the policy period.

[2] PERSON INSURED
Each of the following is an insured under this insurance to the extent set forth below:

(a) if the named insured is designated in the declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor, and the spouse of the named insured with respect to the conduct of such a business;

(b) if the named insured is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the named insured is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;

\*   \*   \*   \*   \*   \*   \*

*This insurance does not apply to bodily injury or property damage arising out of the conduct of any partnership or joint venture of which the insured is a partner or member and which is not designated in this policy as a named insured.* (Emphasis added.)

the same coverage as the policy written in the name of C.B. Askins and Company during the same time frame.

In 1973, Tisdale became dissatisfied with the amount of insurance premiums being paid by [Lake City Heating] and the insurance coverage for [Lake City Heating] was moved to the Brown & Company Insurance Agency located in Lake City. Effective November 1, 1973, the Brown Agency placed [Lake City Heating's] general liability coverage successively with Fire & Casualty Company of Connecticut, American States Insurance Company and Insurance Company of North America. Under each of these policies [Lake City Heating] is a named insured for general liability coverage. This took the coverage of [Lake City Heating] up through 1982 when the partnership was dissolved. At that time [Lake City Heating] as a sole proprietorship was added to the C.B. Askins & Company policy written by Shelby.

In 1975, the policy on C.B. Askins and Company was moved from the T & J Agency and placed through Epps-McLendon Agency. Askins instructed [Louis] Propst of Epps-McLendon to bid on the same coverage Askins currently had with Aetna through the T & J Agency. The documents show that [Lake City Heating] had coverage through the Brown Agency at this time.

[Epps-McLendon] found the lowest bid for C.B. Askins & Company's insurance through Westchester. The policy was modeled on the coverage of the Aetna policy for [C.B. Askins et al.] and included the same named insured, special endorsement for named insureds, and persons insured language. As in the Aetna policy, [Lake City Heating] was only listed for lessor's risk in a building not occupied by the insured with no other classification. [James] Epps [of Epps-McLendon] testified that he was aware that [Lake City Heating] was not included as an insured under the C.B. Askins & Company policy; that he inquired of various employees of Askins as to this coverage on numerous occasions and was told that [Lake City Heating] was being handled by Tisdale and was separately insured through the Brown Agency. [James] Epps continued as C.B. Askins & Company's insurance agent and replaced the Westchester policy with U.S. Fire and

Great American policies with identical provisions. The policies themselves and the premium audit statements for each of the policies show no premium charged or classification listed for heating and air conditioning work, refrigeration work, or sheet metal work, the types of work performed by [Lake City Heating]. The Shelby policy, in effect from 12-16-81 to 10-1-82, also charged no premium for [Lake City Heating] and had identical provisions.

When Askins acquired Tisdale's interest in [Lake City Heating] in late 1982, an endorsement was added to a Shelby general liability policy issued to [C.B. Askins et al.] effectively adding [C.B. Askins d/b/a Lake City Heating and Air Conditioning Company (Sole Proprietor)], as a named insured on October 1, 1982. [C.B. Askins, Sr. d/b/a Lake City Heating and Air Conditioning Company] was also listed on the Reliance policy in effect from 2-1-84 to 10-1-84. Neither policy insured [Lake City Heating] as a partnership of Askins and Tisdale.

This long recitation of facts is necessary to demonstrate that two separate chains of insurance policies were operating from 1972 through 1984. The declaratory judgment action dealt with the chain of policies relating to C.B. Askins and his businesses. The chain of policies specifically naming Lake City Heating as an insured was uncovered during the document production period shortly before trial. None of those policies was placed in evidence. In fact, the second Aetna policy specifically naming Lake City Heating could not be located. Its existence was demonstrated only through certain correspondence and documents identifying it by a separate policy number from the policy issued by Aetna covering C.B. Askins et al.

## II.

The trial court found C.B. Askins and Dave Tisdale d/b/a Lake City Heating and Air Conditioning Company was not a named insured under any policy of insurance admitted into evidence at trial and issued by Aetna, Westchester, U.S. Fire, Great American, Shelby Mutual, and Reliance Insurance Companies. Those policies constituted the insurance chain emanating from C.B. Askins and his businesses. Accordingly, the

court held there was no duty to defend the Moore lawsuit by any insurance company under those policies. We agree.

An insurer's duty to defend is determined from the allegations of the complaint. If the facts alleged in a complaint *against an insured* fail to bring a claim within policy coverage then an insurer has no duty to defend. *S.C. Medical Malpractice Liab. Ins. Joint Underwriting Ass'n v. Ferry*, 291 S.C. 460, 354 S.E. (2d) 378 (1987). Fundamental to the concept of duty to defend is the requirement that the party seeking the defense must be an insured under a contract of insurance.

As outlined in Part I of this opinion, the facts of this case lead to the conclusion Lake City Heating was not an insured under the chain of policies issued by Aetna, Westchester, U.S. Fire, and Great American to C.B. Askins et al. Counsel for Lake City Heating conceded at oral argument it was not a named insured under the policies. Lake City Heating was not an insured under the special endorsements to the policies as C.B. Askins did not own more than fifty percent of Lake City Heating while it was a partnership. The facts also demonstrate no premium was charged by Aetna, Westchester, U.S. Fire, and Great American for the type of activities engaged in by Lake City Heating while it operated as a partnership.

Shelby Mutual added C.B. Askins d/b/a Lake City Heating and Air Conditioning (Sole Proprietor) to the general liability policy issued to C.B. Askins et al. on October 1, 1982. C.B. Askins Sr. d/b/a Lake City Heating and Air Conditioning Company was also listed on the Reliance Insurance policy when it became effective. We agree with the trial court's finding that these policies did not include Lake City Heating (the partnership) as an insured because they named the business as a sole proprietorship of C.B. Askins and under the applicable provision in the policies the partnership would be excluded.[3]

We note the trial court's order stated it was without prejudice to any party or person who might make a claim under the Aetna policy issued specifically to Lake City Heating or for any claim that might be brought under any of the other re-

---

[3] See text of Footnote 2.

cently discovered policies issued specifically to Lake City Heating. This part of the order obviously refers to the second chain of policies of which some evidence was discovered shortly before trial. We agree with the trial court's handling of this aspect of the case. Contrary to the assertion of Lake City Heating, the trial court could not make legal conclusions about the issues of duty to defend and coverage when it did not have the second Aetna policy before it. There was some evidence of the existence of a policy but the trial court could not operate in a vacuum and speculate about the language of the policy.

Lake City also asserts the trial court erred in not determining the issue of coverage. The order of the court stated "[t]he court does not reach the issue of coverage for any named insured in the policies at issue . . . The court's ruling in this matter does not prejudice any actual party to the insurance contracts issued to C.B. Askins & Company by the insurance company parties in this action from bringing a lawsuit to enforce the policies as written." This language is an effort by the court to preserve the rights of any insured under the C.B. Askins claim of policies. The court had already determined Lake City Heating was not an insured under this chain of policies so there would be no coverage under that group of policies for Lake City Heating. However, the court left the matter open as to the actual entities insured under that chain in an abundance of caution for possible future developments in the Moore suit.

In conclusion, we note Lake City Heating did not specifically argue its exception relating to the trial court's ruling on reformation of the policies. This issue is briefly mentioned in a few sentences in the brief. This matter is deemed abandoned on appeal. *Baker v. Chavis*, 410 S.E. (2d) 600 (S.C. Ct. App. 1991); *Am. Fed. Bank FSB v. Parker*, 301 S.C. 509, 392 S.E. (2d) 798 (Ct. App. 1990) (exception effectively abandoned by one sentence argument).

Affirmed.

SHAW and BELL, JJ., concur.